**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60459-CIV-ALTMAN/Hunt**

**THOMAS MACHINERY, INC.,**

     *Plaintiff,*

v.

**EVEREST NATIONAL
INSURANCE COMPANY**, *et al.*,

     *Defendants.*

_____/

## ORDER

Thomas Machinery, Inc. ("Thomas") was sued in state court. *See* Compl. [ECF No. 1-1] ¶¶ 12–15 (discussing the "underlying lawsuit"). When Thomas tendered the claim, its insurer, Everest National Insurance Company ("Everest"), denied coverage. *Id.* ¶¶ 16–19. Alleging that this denial cost it over $200,000 in defense costs, plus an as-yet-undisclosed sum it paid to settle the underlying lawsuit, *id.* ¶ 22, Thomas sued Everest—and, alternatively, its insurance agent, Wilson, Washburn & Forster, Inc. ("Wilson")—in state court.

In its Complaint, Thomas avers that Everest breached the terms of the insurance policy by denying coverage (Count I). *Id.* ¶¶ 25–28. Alternatively, Thomas contends that, if the insurance policy did not cover its claim, then Wilson should be liable for failing to procure adequate coverage on its behalf (Counts II, III, IV). *Id.* ¶¶ 29–50. All parties agree that Thomas' case against Wilson is contingent on a court's initial determination that the insurance policy did *not* cover the underlying lawsuit. *See* Opposition to Motion to Remand [ECF No. 11] at 9; Reply in Further Support of Motion to Remand [ECF No. 13] at 1–2. Put another way, if the insurance policy did cover Thomas for the underlying lawsuit, then Thomas would have no claim against Wilson.

Everest timely removed the case to federal court. *See* Notice of Removal [ECF No. 1] ¶ 8. Everest acknowledges that the parties are not completely diverse: Thomas and Wilson, after all, are both citizens of Florida. *Id.* ¶ 13.[1] Nevertheless, Everest argues that Wilson's citizenship is irrelevant for purposes of establishing diversity jurisdiction because (1) Wilson was "fraudulently joined" as a defendant, and (2) Wilson is a "nominal party." *Id.* Disputing both contentions, Thomas filed a Motion to Remand, in which it says that this Court lacks subject-matter jurisdiction over the case. *See* Motion to Remand [ECF No. 6] at 7.

Wilson, for its part, has filed a Motion to Dismiss the Complaint, in which it maintains that Thomas' claims *against it* are not yet ripe because they are contingent on the outcome of Thomas' separate—and contradictory—claim against its insurer. *See* Memorandum in Support of Motion to Dismiss [ECF No. 7] at 3. Thomas opposes the Motion to Dismiss—but only in part. *See* Partial Opposition to Motion to Dismiss [ECF No. 10] ("MTD Opposition") at 1. Although Thomas agrees that Wilson has no current role in this litigation, it asks the Court to stay—rather than dismiss—the case against Wilson. *Id.*

This leaves the Court with two issues to adjudicate: *First*, does the Court have subject-matter jurisdiction over this case? *Second*, if so, should this Court dismiss or stay Thomas' claims against Wilson? For the reasons set out below, the Court concludes that it does have subject-matter jurisdiction over this case and that Thomas' claims against Wilson should be dismissed.

## ANALYSIS

### A.  The Motion to Remand

"A defendant may remove a case from state court to federal court if the federal court has

---

[1] Thomas is a Florida corporation with its principal place of business in Florida; Everest is a Delaware corporation with its principal place of business in New Jersey; and Wilson is a Florida corporation with its principal place of business in Florida. *See* Notice of Removal ¶¶ 10–12.

original jurisdiction over the case." *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) (citing 28 U.S.C. § 1441(a)). The burden rests on the removing party to establish jurisdiction. *See Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (noting that "uncertainties are resolved in favor of remand"). A removing party may meet its burden by showing that the court has diversity jurisdiction over the case. *See, e.g.*, *Smith*, 786 F. App'x at 939. Notably, jurisdiction is assessed as of the time of removal. *See Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011).

Federal courts have diversity jurisdiction over civil actions when (1) the amount in controversy exceeds $75,000 and (2) the parties are "citizens of different States." 28 U.S.C. § 1332. Ordinarily, this requires *complete* diversity—that is, "the citizenship of each plaintiff must be different from that of each defendant." *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012). But, in certain circumstances, courts will disregard the citizenship of a party while assessing diversity. As relevant here, the Eleventh Circuit has described two such circumstances.

*First*, federal courts must "disregard the citizenship of fraudulently joined parties in determining whether diversity jurisdiction exists." *Martin v. SmithKline Beecham Corp.*, 2006 WL 8433438, at *2 (S.D. Fla. Aug. 15, 2006); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (holding that "an action may nevertheless be removable if the joinder of the non-diverse party . . . were fraudulent"). *Second*, courts must "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

The parties appear to agree that their dispute satisfies the amount-in-controversy requirement. And this agreement is unsurprising: Thomas, after all, seeks over $200,000 in damages for defense costs *alone*—well beyond the $75,000 threshold. *See* Compl. ¶ 22. The parties do disagree, however, about whether Everest has established complete diversity.

### 1. Fraudulent Joinder

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. A plaintiff has fraudulently joined a defendant when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id.* The Eleventh Circuit has said that the removing party's burden of establishing fraudulent joinder is a "heavy one," and that courts "must resolve any uncertainties about state substantive law in favor of the plaintiff." *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983)).

The parties agree that, under Florida law, Thomas has no (present) cause of action against Wilson. *See* Notice of Removal ¶ 15; Motion to Remand at 4. As the parties recognize, this was the precise holding in *Blumberg v. USAA Casualty Insurance Co.*, where the Florida Supreme Court held that an insured's cause of action against its agent for failure to procure adequate insurance accrues *only*, if ever, when the proceeding against the insurer becomes final. *See* 790 So. 2d 1061, 1065 (Fla. 2001); *see also Witkin Design Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2016 WL 1572964, at *2 (S.D. Fla. Apr. 18, 2016) (noting that, under *Blumberg*, "claims against an insurance agent for failing to procure coverage do not accrue until the underlying action

between the insured and the insurance company regarding coverage has been resolved").

But the parties quarrel over what the appropriate remedy under Florida law should be: abatement or dismissal. According to Thomas, Florida courts would abate—or stay—its premature action against Wilson. *See* Motion to Remand at 4–5. In *Blumberg*, the Florida Supreme Court suggested exactly that, noting that an insurance agent who has been sued for failure to procure adequate insurance "can move for an abatement or stay of the claim on the ground that the . . . action [against it] has not yet accrued." *See Blumberg*, 790 So. 2d at 1065. Thomas thus contends that a finding of fraudulent joinder would be improper because a Florida court would allow its claims against Wilson to proceed (albeit in abeyance). Motion to Remand at 4–5.

Everest, on the other hand, points to several post-*Blumberg* decisions in which Florida courts have found that the appropriate remedy in these circumstances is dismissal, not abatement. *See* Opposition to Motion to Remand [ECF No. 11] at 6–7. In particular, more than a decade after the Florida Supreme Court's decision in *Blumberg*, a Florida intermediate appellate court held that, because an insured's "premature" claim against its agent "will not be cured by the passage of time," but "will only be cured by a finding that [the insured's] claim is not covered by the [insurance] policies, the appropriate remedy is a dismissal . . . without prejudice, rather than an abatement." *Wells Fargo Ins. Servs. USA, Inc. v. Blackshear*, 136 So. 3d 1235, 1239 (Fla. 2d Dist. Ct. App. 2014). In Everest's view, then, a state court would dismiss Wilson—leaving only diverse parties here.

Given this abate-or-dismiss uncertainty, one might assume that Everest's accusation of fraudulent joinder must fail—especially since "any uncertainties about state substantive law" must be decided in favor of the plaintiff. *See Crowe*, 113 F.3d at 1538. Indeed, some federal courts have employed precisely this reasoning in rejecting defendants' claims of fraudulent joinder. *See, e.g.*,

*Partners for Pets, Inc. v. S. Owners Ins. Co.*, 2019 WL 8063984, at *2 (N.D. Fla. May 13, 2019);

*MLP Tractor Work, LLC v. Convington Specialty Ins. Co.*, 2019 WL 8112466, at *1 (N.D. Fla.

Apr. 1, 2019).

But other courts—perhaps even a majority—have come out the other way, holding that the

insurance agent was fraudulently joined and denying remand. *See, e.g.*, *JWC Hamptons, LLC v.

Empire Indem. Ins. Co.*, No. 19-62232-CIV-SINGHAL (S.D. Fla. Jan. 24, 2020), ECF No. 34;

*Witkin Design Grp.*, 2016 WL 1572964, at *3. Although these decisions vary in their reasoning,[2]

they all appear to rely on the fraudulent-joinder doctrine's central objectives, which are "not to

reward abusive pleading by plaintiffs, and to protect defendants' statutory right to remove." Wright

& Miller, 14C Fed. Prac. & Proc. Juris. § 3723.1 (Rev. 4th ed.). These objectives are plainly

implicated in cases like this one: where an insured sues its non-diverse insurance agent for claims

that are (admittedly) not yet ripe—and which, indeed, may *never* ripen—and thereby deprives its

---

[2]     Some of these decisions conclude, despite the tension between *Blumberg* and *Blackshear*, that the "overwhelming weight of authority favors dismissal over an abatement." *See, e.g.*, *Witkin*, 2016 WL 1572964, at *3. While this may be so, the fraudulent joinder doctrine, as set out by the Eleventh Circuit, requires "no possibility" that the insured can state a claim in state court. *Triggs*, 154 F.3d at 1287.
       Other decisions suggest that it simply does not matter whether the case is dismissed or stayed: the dispositive point, these cases suggest, is that the plaintiff simply has no *present* cause of action against the agent. *See, e.g.*, *JWC*, No. 19-62232-CIV, at 4. But it is not clear why this should matter. The fraudulent joinder doctrine is premised on the proposition that a case should not be remanded for lack of diversity jurisdiction when the state court would (undoubtedly) dismiss the non-diverse defendant in any event. A stay of the non-diverse defendant, by contrast, would not similarly transform a non-diverse case into a diverse one.
       Still other decisions analyze the agent's motion to dismiss *before* the motion to remand. *See, e.g.*, *Pebb Cleveland, LLC v. Fireman's Fund Ins. Co.*, 2015 WL 328247, at *3 (S.D. Fla. Jan. 23, 2015). And, having dismissed the non-diverse insurance agent, these courts proceed to deny the motion to remand on the ground that only diverse parties remain. But this procedural maneuvering appears to put the cart before the horse, as federal courts must (generally speaking) circumscribe the contours of their jurisdiction *before* reaching the merits of a party's substantive claims. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998) (noting the "two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits").

diverse insurer of the right to remove the case to federal court. As the *JWC* Court explained:

> Parties should not be encouraged to file claims that may never ripen. Filing these claims forces the insurance agent to file a response and prompts the parties to litigate what is the appropriate remedy pending adjudication of the underlying action. This is a waste of the court's and the parties' resources.

See *JWC*, No. 19-62232-CIV-SINGHAL, at 4 (quoting *Ironshore Indem., Inc. v. Banyon 1030-32, LLC*, 2013 WL 4711155, at *8 (S.D. Fla. Aug. 30, 2013)).

Fortunately, this Court need not decide whether Wilson has been fraudulently joined because, under clear Eleventh Circuit precedent, Wilson is a "nominal party." In so finding, this Court at once spurns "abusive pleading," preserves the parties' resources, and protects a diverse defendant's right of removal—all without wading into the unresolved conflict that has arisen between courts in this Circuit on the thorny question of fraudulent joinder.

### 2. Nominal Party

Courts must disregard "nominal parties" and rest their assessment of jurisdiction only upon the citizenship of "real parties." *See Thermoset*, 849 F.3d at 1317 (citing *Navarro*, 446 U.S. at 461). Although "there is no bright-line rule for distinguishing between real and nominal parties," the Eleventh Circuit has provided some guidance. *Id. First*, nominal parties are "neither necessary nor indispensable" to the action. *Id.* The "ultimate test," in this sense, is "whether in the absence of the defendant, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." *Id. Second*, nominal parties either do not have a "real and substantial stake in the litigation" or do not exercise "substantial control over the litigation." *Broyles v. Bayless*, 878 F.2d 1400, 1403 (11th Cir. 1989) (emphasis omitted). Wilson is, for three reasons, a nominal party under each of these tests.

*First*, Wilson is "neither necessary nor indispensable" because final judgment would not be "unfair or inequitable" in Wilson's absence. To the contrary, Thomas concedes that "a trial

court . . . has discretion to either dismiss or abate" its claims against Wilson, belying any contention that Wilson is somehow indispensable to this case. *See* MTD Opposition at 3. And, indeed, in similar circumstances, courts regularly dismiss insurance agents, like Wilson, while the case against the insurer proceeds. *See, e.g.*, *JWC*, No. 19-62232-CIV-SINGHAL, at 4 (dismissing insurance agent); *Witkin Design Grp.*, 2016 WL 1572964, at *3 (same); *AIX Specialty Ins. Co. v. Members Only Mgmt., LLC*, 2019 WL 1359730, at *2 (S.D. Fla. Mar. 26, 2019) (same); *Evanston Ins. Co. v. Price4Limos, LLC*, No. 13-14177-CIV-MARTINEZ, at 5 (S.D. Fla. June 11, 2015), ECF No. 86 (same); *Pebb Cleveland, LLC v. Fireman's Fund Ins. Co.*, 2015 WL 328247, at *3 (S.D. Fla. Jan. 23, 2015) (same); *Hernandez v. Infinity Indem. Ins. Co.*, 44 F. Supp. 3d 1220, 1223 (S.D. Fla. 2014) (same); *Blackshear*, 136 So. 3d at 1239 (same). And this makes sense. The Court can—and must—fully adjudicate the coverage question *before* it can reach Thomas' claim that Wilson procured inadequate coverage. Wilson's presence is thus very much *unnecessary* to this Court's adjudication of the antecedent coverage action.

For this reason, this case differs materially from *Thermoset*, where the Eleventh Circuit rejected the argument that a non-diverse defendant was merely a nominal party. Because the plaintiff in *Thermoset* had brought a product liability action, the question of liability would need to be allocated at trial in a manner "proportional to [each defendant's] percentage of fault." *Thermoset*, 849 F.3d at 1318. The presence of both *Thermoset* defendants at a single trial was, therefore, necessary so that the jury could apportion liability between them. Here, by contrast, everyone agrees that Wilson *cannot* participate in Thomas' trial against Everest. Wilson's presence, in fact, would be tremendously confusing to the jury, since Thomas' claim that Wilson failed to procure adequate coverage directly contradicts Thomas' primary position, which is that Everest is bound to coverage by the (adequate) policy Wilson (properly) procured. Unlike what

happened in *Thermoset*, then, Thomas may proceed to a separate trial against Wilson *only if* it is first unsuccessful in its action against Everest.

Thomas has advanced *no arguments* for its position that Wilson's presence in this lawsuit is "necessary and indispensable" or that, in Wilson's absence, final judgment would be "unfair or inequitable." *See generally* Motion to Remand at 6–7. It has thus waived any such claims. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief . . . are deemed waived."). In the interests of fairness, however, the Court will consider two possible arguments in support of Thomas' view. For one, Thomas could argue that it would be unfair for the Court to require it to litigate separately against Everest and Wilson because, to do so, it would need to pay two filing fees. But "there is no inherent unfairness in requiring a party to pay the nominal filing fees required to bring an action in the appropriate Court possessing jurisdiction over a plaintiff's claims, and Plaintiff in this case has not indicated that [it] is unable to pay those fees." *Johnson v. Express Serv. Messenger & Trucking, Inc.*, 2008 WL 2944899, at *6 (S.D. Fla. July 25, 2008).

Thomas could also say that separate and parallel lawsuits could result in inconsistent (and unfavorable) rulings. After all, this Court could find, in Thomas' suit against Everest, that Thomas has *no coverage* only for a state court to conclude—in Thomas' separate case against Wilson— that Wilson is not liable because there *is coverage*. This District, however, has faced—and rejected—this concern before. As the Court put it in a similar context, such unfavorable rulings would not put the insured—or any other party—"at risk of incurring double, multiple, or inconsistent obligations." *S.-Owners Ins. Co. v. Hayden*, 2009 WL 3818379, at *5 (S.D. Fla. Nov. 13, 2009). The insured, to be sure, "could simply lose both actions, but that is a risk every litigant takes." *Id.*; *see also Price4Limos, LLC*, No. 13-14177-CIV-MARTINEZ, at 5 (relying on *S.-*

*Owners* in rejecting an insured's claim that dismissal of its insurance agent would raise the "specter" of inconsistent judgments); *JWC*, No. 19-62232-CIV-SINGHAL, at 4 (rejecting the insured's contention that dismissal of the insurance agent "may result in inconsistent verdicts").

*Second*, Wilson is a nominal party because it does not have a "real and substantial stake in the litigation," and because it does not exercise "substantial control over the litigation." *Broyles*, 878 F.2d at 1403 (emphasis omitted). In fact, Wilson has asked to be dismissed from this lawsuit. And, while Thomas opposes that request, even it agrees that, at a minimum, its claims against Wilson should be stayed. Wilson, in short, has no control—let alone substantial control—over this litigation. Wilson also has no "real and substantial stake in the litigation." After all, Thomas' claims against Everest can result in one of two possible outcomes: If Thomas prevails, then the case against Wilson is mooted; if Thomas loses, then Thomas will file a separate action against Wilson, in which Wilson will have a full and fair opportunity to protect its own interests. Either way, Wilson's "real and substantial" interests are simply not at stake *here*.

Again, the Eleventh Circuit's reasoning is instructive. In a case arising from a car crash, the court held that the plaintiff's insurer was a nominal party whose citizenship need not be considered in the diversity calculus. *See Broyles*, 878 F.2d at 1406. The court rested its decision on several factors. *Id.* at 1403–06. But, as relevant here, the court noted that the "essential nature" of the "present proceedings" was "an action in tort between diverse citizens," in which the insurer may, depending on the outcome of the underlying suit, "escape any financial obligations." *Id.* at 1405. Moreover, the court explained: "[W]hile [the insurer] has a financial stake in the litigation, it is not a real party in interest for purposes of determining diversity. In this case, [the insurer's] liability is contingent and indirect." *Id.* Swap "insurer" for "insurance agent," and the Eleventh

Circuit's holding squarely disposes of this case.[3]

      *Third*, the Court finds persuasive the Middle District of Florida's decision in *Mobro Marine Inc. v. Essex Insurance Co.*, 2011 WL 6328255, at *4 (M.D. Fla. Dec. 15, 2011). There, as here, an insured brought a coverage claim against its insurer and a failure to procure claim against its insurance agent. The insurer removed the case over the agent's objection. Because the nominal party doctrine also provides an exception to the general rule that all defendants must agree to removal, the question in *Mobro Marine*, as here, was whether the insurance agent is a real or only a nominal party. *Id.* at *2.

      The court easily concluded that the insurance agent was just a nominal party. The court agreed that the agent had "an interest in the outcome of the coverage issue in the sense that the determination of whether or not coverage exists under the policy determines whether or not Plaintiff may proceed against [the agent] on the failure to procure claims." *Id.* at *4. But the court was "not convinced that such interest makes [the agent] a necessary or indispensable party or that it would be inequitable or unfair to [the agent] or Plaintiff to render a final judgment on the coverage [claim]" in the agent's absence. *Id.* Crucially, the court explained that, if the agent were not a nominal party, "the result would be that the Defendant concerned only with contingent and premature claims would be permitted to dictate whether other diverse Defendants with non-contingent claims asserted against them have access to a federal forum." *Id.* Likewise, here, the Court is not convinced that the contingent, indirect, and premature action against Wilson should

---

[3] As the *Broyles* Court pointed out, the litigation against the insurer was contingent and indirect because: "First, the plaintiff must be awarded damages greater than the amount for which the defendant's own insurance company has responsibility. Second, before liability may be imposed on [the insurer], the issues of coverage must be litigated." *Broyles*, 878 F.2d at 1405. In this sense, the insurer was "twice removed from direct liability." *Id.* The same is true here: *First*, Thomas must lose the coverage action. *Second*, Thomas must prevail in its separate suit against Wilson.

deprive a diverse defendant of access to a federal forum.

Because the amount in controversy exceeds $75,000 and the real parties to this controversy are completely diverse, this Court has jurisdiction over this case. Thomas' Motion to Remand is therefore **DENIED**.

### B. The Motion to Dismiss

Everest, as discussed, may not have (conclusively) established that Thomas fraudulently joined Wilson. Nevertheless, the Court—assured of its own jurisdiction—is satisfied that Thomas' claims against Wilson should be dismissed. While Thomas contends that this Court, in its discretion, should abate—rather than dismiss—these claims, the Court finds, for the following three reasons, that dismissal is the proper course here.

*First*, "the trend in this District has been to dismiss the premature claims against insurance agents without prejudice." *Witkin Design Grp.*, 2016 WL 1572964, at *3 (dismissing insurance agent without prejudice as "premature"); *JWC*, No. 19-62232-CIV-SINGHAL, at 4 (same); *AIX Specialty Ins. Co.*, 2019 WL 1359730, at *2 (same); *Price4Limos, LLC*, No. 13-14177-CIV-MARTINEZ, at 5 (same); *Pebb Cleveland, LLC*, 2015 WL 328247, at *3 (same); *Hernandez*, 44 F. Supp. 3d at 1223 (same); *see also Blackshear*, 136 So. 3d at 1239 (same). The Court sees no reason to deviate from this trend here.

*Second*, this trend is well-supported. Like the insureds in the long line of cases dismissing insurance agents as premature, Thomas has no present claim against Wilson. Thomas, in fact, may never have a claim against Wilson. As a result, "public policy and judicial economy concerns actually favor dismissal instead of an abatement or stay." *Witkin Design Grp.*, 2016 WL 1572964, at *3. After all, filing these premature claims "forces the insurance agent to file a response and prompts the parties to litigate what is the appropriate remedy pending adjudication of the underlying action. This is a waste of the court's and the parties' resources." *Ironshore*, 2013 WL

4711155, at *8.

*Third*, there is a serious constitutional question regarding whether this Court has jurisdiction over Thomas' premature claim. "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Cowan v. Provident Life & Accident Ins. Co.*, 2018 WL 7577756, at *2 (S.D. Fla. Nov. 28, 2018) (quoting *Digital Properties, Inc. v. City of Plantation*, 121 F. 3d 586, 589 (11th Cir. 1997)). In *Cowan*, this Court considered a bad-faith claim, which would not "accrue until there ha[d] been a final adjudication of liability under [a] disability policy." *Id.* The Court dismissed the premature claim without prejudice because "a federal court should not exercise subject matter jurisdiction over claims that are not ripe." *Id.* at *3. This reasoning applies equally to Thomas' failure-to-procure claims, which have not yet accrued. Because "the Court favors the outcome that does not risk running afoul of Article III of the Constitution," *Terenzio v. LM Gen. Ins. Co.*, 423 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019), Thomas' premature claims against Wilson are **DISMISSED**.

***

The Court, therefore, **ORDERS and ADJUDGES** that:

(1) the Plaintiff's Motion to Remand [ECF No. 6] is **DENIED**; and

(2) Defendant Wilson's Motion to Dismiss [ECF No. 1-1] is **GRANTED**. Thomas' claims against Wilson are **DISMISSED without prejudice**. The Clerk of Court shall terminate Wilson from the docket.

13

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 21st day of May 2020.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record