UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 0:20-CV-60459-RKA

THOMAS MACHINERY, INC.,

    Plaintiff,

v.

EVEREST NATIONAL INSURANCE COMPANY
and WILSON, WASHBURN & FORSTER, INC.,

    Defendant.
_____/

### DEFENDANT EVEREST NATIONAL INSURANCE COMPANY'S
### RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Everest National Insurance Company ("Everest"), files its response in opposition to Plaintiff, Thomas Machinery, Inc.'s ("Thomas" or "Thomas Machinery"), Motion for Partial Summary Judgment on the Duty to Indemnify [DE 77].

## I.     PRELIMINARY STATEMENT

As the Court knows, this coverage dispute arises out of the theft of a concrete pump truck (the "Truck") that was owned by Ainsworth International, LLC ("Ainsworth"). The parties' previously filed cross-motions for summary judgment on the duty to defend. Now Thomas seeks partial summary judgment on Everest's duty to indemnify for the amount Thomas agreed to pay Ainsworth as part of a settlement agreement in the underlying action. [DE 77].

Thomas bases its motion on three arguments: (1) the theft of its customer's Truck constitutes "property damage" as defined in the Everest Policy and falls within the Policy's Insuring Agreement; (2) the Impaired Property Exclusion does not apply; and (3) Thomas's theory

on the measure of damages, should Thomas prevail on the breach of the duty to defend or duty to indemnify.[1]  None of these arguments sustain Thomas' request for summary judgment.

First, Thomas cannot establish that the theft falls within the Policy's Insuring Agreement. The Truck was not physically damaged.  The Truck was stolen, and Thomas' obligation to pay Ainsworth damages is for loss of the stolen Truck.  Thomas has not incurred any obligation to pay Ainsworth due to physical injury or damage to the Truck.  Thomas' attempt to manufacture post-theft damages is irrelevant and without merit.

Second, Thomas fails to establish the Impaired Property Exclusion does not apply.  The theft of the Truck arises out of Thomas' failure to protect its customer's property.  Ainsworth gave the Truck to Thomas for repairs as part of the agreement between the parties.  Thomas failed to prevent the Truck from being stolen, and failed to return the Truck to Ainsworth, which violated the agreement with Ainsworth.

Third, Thomas' measure of damages for breach of the duty to defend and indemnify is incorrect.  For any breach of the duty to defend, Everest would only be responsible for the attorney's fees and costs that Thomas incurred in defending the Underlying Action *after* the date Thomas provided notice of the operative complaint to Everest.  Everest would have no responsibility for any fees and costs incurred prior to the date.  Nor would Everest be responsible for the amount Thomas agreed to pay Ainsworth as part of the settlement agreement.  For any breach of the duty to indemnify, Everest would only be obligated to pay Thomas for the amount in the settlement agreement, not interest, since Thomas was not required to pay interest on this amount.

---

[1] Thomas did not move for summary judgment on the Care, Custody, or Control Exclusion. Everest maintains that this exclusion bars coverage [DE 49, Aff. Def. No. 2] and moved for summary judgment on its application to the facts of the Underlying Action [DE 76 at 11-19].

Thomas has failed to carry its burden to establish it is entitled to summary judgment on these issues and, therefore, the Court should deny Thomas' motion.

## II. THE MATERIAL FACTS TO THOMAS' MOTION FOR SUMMARY JUDGMENT ON THE DUTY TO INDEMNIFY

### A. Factual Background

The Underlying Action arises out of a dispute between Thomas, a shop that services concrete pump trucks, and its customer, Ainsworth.[2]  In June of 2014, Ainsworth purchased the Truck from a seller in Puerto Rico.[3]  A few months later, Leslie Ainsworth, the sole owner of Ainsworth International, LLC,[4] and James ("Jim") Henegar, the President of Thomas Machinery,[5] entered into an agreement whereby Thomas would make repairs and modifications to the Truck, including installation of the new boom pipe.[6]

Ainsworth had the Truck transported to Thomas' Tampa facility on or about November 17, 2014, in order for Thomas to make repairs to the Truck.[7]  The Truck was ultimately stolen from Thomas' Tampa yard on December 5, 2014.[8]  At the time of the theft, Thomas had not completed the repairs or modifications to the Truck, and Thomas had not canceled the agreement to repair and make modifications to the Truck with Ainsworth.[9]  Ainsworth was eventually able to locate

---

[2] [DE 28 at ¶ 2; DE 68-1, James Henegar Depo. I, p. 6:22-25].
[3] [DE 68-2, Leslie Ainsworth Depo. I, p. 20:21—22:20; DE 68-3].
[4] [DE 68-2, Leslie Ainsworth Depo. I, p. 60:24-25; DE 68-4, Leslie Ainsworth Depo. II, p. 8:2-22].
[5] [DE 68-1, James Henegar Depo. I, p. 6:9-13].
[6] [DE 68-5, James Henegar Depo. II, p. 9:23—10:14; DE 68-1, James Henegar Depo. I, p. 7:1-17; DE 68-1, Leslie Ainsworth Depo. I, p. 45:13-23].
[7] [DE 68-10, David Renker Depo., p. 12:22-25, p. 14:4-8; DE 68-2, Leslie Ainsworth Depo. I, p. 90:25—91:6].
[8] [DE 68-15, Matthew Magent Depo., p. 9:10—11:17].
[9] [DE 68-2, Leslie Ainsworth Depo. I, p. 82:2-5; DE 68-9, Jack Henegar Depo., p. 15:7-11].

the Truck in the Dominican Republic, where it was being used to pump concrete, but Ainsworth was unable to recover the Truck.[10]

### B. The Underlying Action and Settlement Agreement

In June of 2015, Ainsworth sued Thomas in state court in Miami-Dade County. After nearly two years of litigation, on March 28, 2017, Ainsworth filed its Second Amended Complaint filed asserting a claim of negligence and negligent bailment against Thomas. [DE 28-1]. Thomas tendered the Second Amended Complaint to Everest on March 30, 2017 [DE 28-3], and Everest subsequently denied any obligation to defend or indemnify Thomas. [DE 28-4, DE 28-6].

Ultimately, Ainsworth and Thomas entered into a settlement agreement (the "Settlement Agreement") and the Underlying Action was dismissed. [DE 47-5]. As part of the Settlement Agreement, Thomas agreed to pay Ainsworth $227,500 in periodic payments (the "Settlement Amount"). *Id.*, p. 4. No interest would be assessed to the Settlement Amount. [DE 74 at ¶ 15].

It is undisputed that Ainsworth sought damages in excess of $300,000 in the Underlying Action for the "value of the pump truck" and for "repairs [ ]Ainsworth alleged he made to the pump truck" prior to the theft. [DE 74-1 at ¶ 13]. Indeed, Ainsworth sued Thomas for causing the *theft* of its Truck [DE 28-1]. Ainsworth did not sue Thomas seeking damages for any dents, damage, or physical injury to the Truck.

### III.   DUTY TO INDEMNIFY

To determine whether Everest has a duty to indemnify Thomas, the Court must look to the actual facts in the Underlying Acton. "Unlike the duty to defend, which generally is triggered by the allegations in the underlying complaint, an insurance company's duty to indemnify an insured party is narrower and is determined by the underlying facts adduced at trial or developed through

---

[10] [DE 68-2, Leslie Ainsworth Depo. I, p. 71:3-12, p. 72:13-25—73:1-12; DE 68-19].

discovery during the litigation." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1324 (11th Cir. 2014) (quotation marks omitted). It is "blackletter law" that the duty to indemnify is based on "the actual facts, not only those that were alleged in the state court complaint." *Health First*, 747 Fed. Appx. at 749 (quoting *Stephens*, 748 F.3d at 1324); *see also Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co.*, 916 F. Supp. 2d 1244, 1253 (M.D. Fla. 2013) (holding duty to indemnify "is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury").

"Therefore, notwithstanding the allegations against the insured, if the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification." *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. 4th DCA 2015) (quoting *Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004)). Accordingly, "notwithstanding the allegations in the underlying complaint or stipulated facts in the consent judgment, the plaintiff's underlying claims must actually come within the coverage of the policy (i.e., on the merits, the insurer has a contractual duty to indemnify)." *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2009), *as amended* (Jan. 4, 2010). "This premise holds true even where, as here, the insured's liability was arrived at through a settlement of the action against the insured, because a settlement does not, by itself, obligate the insurer to pay for a non-covered claim. Instead, the insurer's duty to indemnify a settlement obligation must be measured by the facts extant at the time the settlement was reached." *Id.* (quoting *Royal Oak Enters.*, 344 F. Supp. 2d at 1366).

## IV. ARGUMENT

### A. Thomas Fails to Prove the Requisite "Property Damage" to Trigger Coverage.

Thomas fails to establish that its obligation to pay damages to Ainsworth was because of "property damage" to the Truck. The Policy's Insuring Agreement provides that Everest will only pay the sums that Thomas "becomes legally obligated to pay as damages because of . . . 'property damage.'" [DE 28-2, p. 4]. The Policy defines "property damage" to encompass two specific circumstances. The first is "[p]hysical injury to tangible property." [DE 28-2, p. 18]. The second is "[l]oss of use of tangible property that is not physically injured." *Id.* Therefore, Ainsworth's claim against Thomas falls within the Policy's Insuring Agreement only if: (1) Thomas was legally obligated to pay damages because of physical injury to tangible property or (2) Thomas was legally obligated to pay damages because of loss of use of tangible property that was not physically injured.

Importantly, the two prongs of "property damage" are mutually exclusive. The first prong requires "physical injury" to property, but the second prong requires the absence of physical injury. A single occurrence involving a specific piece of personal property cannot simultaneously satisfy both definitions of "property damage". The theft of the Truck either satisfies one prong or the other – not both prongs. Thomas fails to carry its burden to establish either prong applies.

### 1. No Evidence that Thomas is Legally Obligated to Pay Ainsworth Damages for "Physical Injury" to the Truck.

Thomas fails to make any argument, present any evidence, or cite any legal authority for its position that Thomas is obligated to pay Ainsworth because of physical injury to the Truck. [DE 77 at 6]. However, in arguing for the inapplicability of the Impaired Property Exclusion, Thomas argues the theft caused "physical injury" to the Truck because there was purportedly new dents in the Truck and the Truck suffered wear and tear as a result of its use following the theft.

6

*Id.* at 7.  Neither is sufficient to carry Thomas' burden of establishing the requisite "property damage" to trigger coverage under the Policy.

First, the testimony upon which Thomas relies to establish "physical injury" to unspecified portions of the Truck is of no evidentiary value because it is vague, speculative, and not based upon personal knowledge.  Thomas relies solely on the declaration James Henegar, in which Mr. Henegar states that, after personally looking at pictures of the Truck after the theft when it was located in the Dominican Republic, "it is clear from this the Truck has dents and other signs of physical injury and deterioration that were not there before the Truck was stolen." [DE 74-1 at ¶ 18].  However, Mr. Henegar previously testified that the last time he actually saw the Truck was prior to June 2014. [DE 68-5, James Henegar Depo. II, p. 9:6-22].  He described the condition of the Truck as "in terrible shape," "[v]ery beat up and abused," and "[n]ot well maintained or taken care of." *Id.* at p. 7:15-24.

The Truck was not stolen until six months later in December 2014. [DE 68-15, Deposition of Matthew Magent on January 7, 2019, p. 10:6-7; DE 68-16, p. 3 (TM00022)].  During the intervening months, the Truck underwent services by another party and traveled between Miami, Orlando, and Tampa. [DE 68-2, Ainsworth Depo. I, p. 37:4-19, 46:17—47:7; DE 68-4, Ainsworth Depo. II, p. 31:1-4].

Mr. Henegar provides no foundation that supports his testimony.  He provides no specifics as to the purported physical injuries to the Truck or how it differs from the "[v]ery beat up and abused" state he last saw it in.  He speculates that these purported injuries occurred after the theft even though he did not see the Truck at any point during the six months prior to the theft.  He cannot, and does not, testify that these new dents were caused by the theft.

7

As a result, Mr. Henegar lacks the personal knowledge to competently testify as to when or how these purported new dents and unspecified other signs of physical injury occurred. A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "For a matter to be considered within a witness's personal knowledge, it must be derived from the exercise of his own senses, not from the reports of others—in other words, it must be founded on personal observation." *S. Broward Hosp. Dist. v. Coventry Health & Life Ins. Co.*, 14-61157-CIV, 2015 WL 12532580, at *3 (S.D. Fla. June 10, 2015) (internal citations and quotations omitted). Mr. Henegar's declaration is nothing more than ad-hoc vague speculation attempting to manufacture "physical injury" to the Truck so Thomas can establish coverage under the Policy. The Court should not consider his testimony in ruling on Thomas' motion.

Second, even if the Court does consider this testimony, Ainsworth did not sue, and Thomas did not become legally obligated to pay Ainsworth through the Settlement Agreement, because of purported dents or wear and tear to the Truck. As Thomas concedes, Ainsworth sought damages from Thomas "for the amounts expended to repair the Truck" prior to the theft to make the Truck marketable as well as "lost profits from a potential sale" of the Truck. [DE 74 at ¶ 46].

The declaration of Mr. Henegar states that Ainsworth sought damages in excess of $300,000 for the "value of the pump truck" and "repairs Mr. Ainsworth alleged he made to the pump truck" prior to the theft. [DE 74-1 at ¶ 13]. This is consistent with Ainsworth suing Thomas for causing the *theft* of its Truck. [DE 28-1]. Ainsworth did not seek damages for alleged dents in the Truck or post-theft wear and tear. This is not a case where Ainsworth sought damages to repair dents in the Truck caused by Thomas. Nor is it a case where Ainsworth sought damages to compensate it for the loss of the Truck's value as a result of wear and tear to the Truck.

8

Instead, Ainsworth sought damages from Thomas because it lost the Truck entirely. There is no evidence that Ainsworth sought damages from Thomas for anything other than the theft that permanently dispossessed Ainsworth of the Truck. Even if the Court accepts Thomas' evidence of dents and wear and tear, neither establish that Thomas became obligated to pay Ainsworth because of "property damage" by way of "physical injury" to the Truck.

Third, the evidence establishes that no physical injury to the Truck resulted in Ainsworth's loss of the entire Truck. Ainsworth did not seek to recover the value of the Truck from Thomas because, for example, the Truck was rendered inoperable due to physical injury. The undisputed facts establish that there was no physical injury to the entire Truck since it continued to operate as a concrete pump truck and pump concrete after the theft. [DE 68 at ¶ 20; DE 68-2, Ainsworth Depo. I, p. 71:3-12, p. 72:13-25—73:1-12; DE 68-19]. Ainsworth sought to recover the value of the Truck from Thomas because the Truck was stolen, not because it suffered any physical injury.

Fourth, the theft of the Truck, in and of itself, also does not constitute "physical injury" to the Truck. In *U.S. Fidelity & Guaranty. Co. v. Mayor's Jewelers of Pompano, Inc.*, 384 So. 2d 256 (Fla. 4th DCA 1980), the Fourth DCA held that theft of jewelry constituted "property damage" where the term was defined as "injury to or destruction of tangible property." *Id.* at 257-58. However, where the definition includes the limitation of "physical" injury, mere theft does not constitute "property damage." *Cf. id.* at 258 ("If, as USF&G maintains, property is damaged only when it suffers actual, physical damage, it would have been relatively simple to include the word 'physical' in its definition."); *see Old Republic Ins. Co. v. W. Flagler Associates, Ltd.*, 419 So. 2d 1174, 1178 & n.6 (Fla. 3d DCA 1982) ("[I]f . . . the policy in [*Mayor's Jewelers*] had . . . restricted injury to 'physical injury,' then, presumably, the theft, despite rendering the jewelry valueless,

9

would not have come within the definition of property damage."). Here, the theft of the Truck also does not constitute physical injury.

Accordingly, Thomas has failed to establish that its obligation to pay Ainsworth was because of "physical injury" to the Truck. Thomas, consequently, cannot establish "property damage" under the first prong of the definition.

### 2. Theft of the Truck does Not Constitute "Loss of Use."

Thomas also maintains that the theft of Truck constitutes "property damage" under the second prong of the definition because the theft "deprived Ainsworth of 100% of the use of the Truck." [DE 77 at 6]. The Court is familiar with Everest's position that theft does not constitute "property damage" as "loss of use of tangible property not physical injured." [DE 56 at 3-5; DE 66 at 9; DE 76 at 11-12]; *see Twin City Fire Ins. Co. v. CR Techs., Inc.*, 90 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015). Everest submits that issue has not been decided by this District or the Eleventh Circuit, and the weight of authority supports a finding that theft does not constitute "property damage" under this definition in the Policy. *See, e.g.*, *Artisan & Truckers Cas. Co. v. Hanover Ins. Co.*, 126 F. Supp. 3d 998, 1002 (N.D. Ill. 2015) (holding theft does not constitute "loss of use").

As courts have frequently recognized, there is a material difference between "loss of use of property" and "loss of property." *See Advanced Network, Inc. v. Peerless Ins. Co.*, 119 Cal. Rptr. 3d 17, 25 (Cal. Ct. App. 2010); *see also GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 94 C 431, 1994 WL 383909, at *4 (N.D. Ill. July 19, 1994) (holding "'loss of use' is narrower than loss of property" and "[l]oss of use is intended to compensate for a temporary loss and thereby is determined by rental value," while "loss of property is intended to compensate for a permanent loss and is determined by replacement cost").

The "use of the additional limiting language ['of use'] was intended to serve a purpose." *Illinois Mun. League Risk Mgmt. Ass'n v. City of Collinsville*, 100 N.E.3d 185, 192 (Ill. App. Ct. 2018). Indeed, in other insurance contexts, Florida courts have rejected attempts to equate "loss of" property with "loss of use of" property. *See, e.g., Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, --- F. Supp. 3d ----, ----, 2021 WL 602585, at *7-10 (S.D. Fla. Feb. 16, 2021) (rejecting argument that "loss of" property could be construed to include "loss of use of" property). Interpreting "loss of property" as the same as "loss of use of property" would render the terms "of use" superfluous and meaningless, "in contravention of established rules of contract interpretation." *See Ohio Nat. Life Assur. Corp. v. Jones*, 11-23786-CIV, 2013 WL 1900446, at *10 (S.D. Fla. May 7, 2013).

As one court explained: "To take a simple example, assume that an automobile is stolen from its owner. The value of the 'loss of use' of the car is the rental value of a substitute vehicle; the value of the 'loss' of the car is its replacement cost." *Collin v. Am. Empire Ins. Co.*, 26 Cal. Rptr. 2d 391, 408–09 (Cal. Ct. App. 1994).

Here, as in *Collin*, Ainsworth "did 'lose the use' of their property" but "the damages [Ainsworth] recovered were not 'loss of use' damages but the value of the property itself." *See id.* 26 Cal. Rptr. 2d at 409. As a result, Thomas failed to meet its burden to establish that it is obligated to pay Ainsworth the Settlement Amount because of "property damage" to the Truck.

Based on the foregoing, Thomas has failed to establish entitlement to coverage under the Policy, and its motion for summary judgment should be denied.[11]

---

[11] Thomas claims the theft of the Truck is covered under "either prong for the 'property damage' definition." [DE 77 at 6]. However, Thomas appears to exclusively rely on the second prong of the definition ("loss of use of tangible property not physically injured"). *Id.* (citing *Travelers Ins. Co. v. De Bothuri*, 465 So. 2d 662, 663 (Fla. 4th DCA 1985) (discussing second prong of "property damage" definition)). Yet, Thomas simultaneously argues that the Impaired Property Exclusion in the Policy does not apply because the Truck was "physically injured." *Id.* at 7-8. If there is no

11

**B. Thomas Fails to Establish that the Impaired Property Exclusion does Not Apply.**

Thomas also seeks summary judgment on the application of the Impaired Property Exclusion. The relevant portion of this exclusion bars coverage for "property damage" to "property that has not been physically injured, arising out of . . . [a] delay or failure by [the insured] or anyone acting on [the insured's] behalf to perform a contract or agreement in accordance with its terms." [DE 28-2, p. 7-8]. Thomas argues the exclusion does not apply because there was "physical injury" to the Truck, and the theft of the Truck did not result out from Thomas' failure to perform a contract or agreement in accordance with its terms. [DE 77 at 7].

First, the evidence conclusively establishes there was no physical injury to the Truck that would preclude application of the exclusion. As discussed, Ainsworth did not seek damages for physical injury to the Truck, Thomas is not obligated to pay Ainsworth damages for physical injury to the Truck, the Truck continued to operate as designed after the theft, and, even though it is not relevant, Thomas has presented insufficient evidence of post-theft dents or other damages to establish physical injury. *See* Section IV.A.1, *supra*. Florida law holds that theft of property does not constitute physical injury to the property. *See, e.g.*, *Old Republic Ins. Co. v. W. Flagler Associates, Ltd.*, 419 So. 2d 1174, 1178 & n.6 (Fla. 3d DCA 1982). Moreover, because Thomas argues there is "property damage" under the prong that is predicated on the absence of physical injury, Thomas cannot now maintain that there is physical injury. Accordingly, Thomas' attempt to avoid application of the Impaired Property Exclusion is without merit.

Second, the theft of the Truck definitively *arises out of* Thomas' failure to perform in accordance with its agreement with Ainsworth. The term "arising out of" is interpreted

---

evidence of physical injury for purposes of establishing "property damage," then there cannot be, at the same time, sufficient evidence of physical injury to prevent application of the Impaired Property Exclusion. Thomas' arguments are inherently contradictory and cannot be reconciled.

expansively to mean "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532–33 (Fla. 2005). Importantly, "arising out of" is broader in meaning than "caused by" or "results from." *See id.* Thomas' attempts to narrow the exclusion to only circumstances where property damage is "a result of" or "solely" from Thomas's failure to perform the agreement, which is contrary to the Impaired Property Exclusion's use of "arising out of."

Given the broad scope of the phrase, there can be no reasonable dispute that the theft "arises out of" Thomas' failure to abide by the agreement with Ainsworth. Thomas agreed to perform repairs and modifications on the Truck and owed an obligation to protect the property of its customers. Thomas claims that the agreement with Ainsworth did not include specific terms as to the storage of the Truck while Thomas kept it at its shop for repairs [DE 74-1 at ¶ 9], but that does not mean Thomas had no obligation to prevent the Truck from being stolen or damaged as part of the agreement with Ainsworth. It is customary for repair shops like Thomas to have an obligation to protect customer's property in the course of their business transactions. *See Silverton Enterprises, Inc. v. Gen. Cas. Co. of Wisconsin*, 422 N.W.2d 154, 157-58 (Wis. Ct. App. 1988) (holding vehicles left for repair are "under the [the insured's] supervision," and such "[s]upervision . . . is a necessary element of the repair."). Ainsworth understood that to be the case in its agreement with Thomas. [DE 68-2, Leslie Ainsworth Depo. I, p. 70:2-15].

Thomas cannot seriously contend it has no obligation to protect vehicles relinquished to its shop for repairs so long as Thomas did not explicitly agree to do so in a specific term of the agreement. The obligation to protect the vehicle is implicit in every transaction where a customer leaves a vehicle with a repair shop like Thomas.

In addition, at no point did Thomas cancel the agreement with Ainsworth. [DE 68-10, Jack Henegar Depo., p. 15:7-11]. Upon completion of the repairs, Thomas was obligated to return or relinquish the Truck back to Ainsworth. Of course, Thomas failed to do so. That is another part of the agreement that Thomas failed to perform. In short, "all of [Ainsworth's] damages arise from [Thomas'] failure to satisfy contractual obligations it owed to [Ainsworth]." *See New Hampshire Ins. Co. v. Hill*, 516 Fed. Appx. 803, 806 (11th Cir. 2013); *see also New Hampshire Ins. Co. v. Hill*, CIV.A. 11-414-CG-B, 2012 WL 3685500, at *7 (S.D. Ala. Aug. 23, 2012) (applying Florida law and holding exclusion applied where RVs were delivered to insured in accordance with contract and RVs were stolen before fulfillment of contractual obligations).

Thomas has failed to demonstrate that the Impaired Property Exclusion does not apply. The material undisputed facts establish that it does apply. Consequently, Thomas' motion for summary judgment in this respect must be denied.

### C. Thomas Evidence Regarding Damages is Insufficient to Warrant Summary Judgment.

The final portion of Thomas' motion relates to the measure of damages for any potential breach of the duty to defend as well as breach of the duty to indemnify. Each are addressed in turn.

#### 1. Measure of Damages for Breach of the Duty to Defend.

As an initial matter, Thomas improperly raises argument with respect to breach of the duty to defend. The Court instructed Thomas to file its Motion for Partial Summary Judgment on Everest's Duty to Defend by March 17, 2021. [DE 40]. Thomas filed its motion by the deadline, but did not raise any argument with respect to the proper measure of damages. [DE 48]. Now Thomas attempts to do so in a motion addressing Everest's duty to indemnify Thomas for the Settlement Amount. However, the damages for breach of the duty to defend, and whether Everest

14

has a duty to indemnify, are not related. The deadline to consider argument with respect to the duty to defend has come and gone. The Court should refuse to consider the argument in ruling on this motion.

In any event, to the extent Thomas argues that it is entitled to recover the Settlement Amount simply because Everest breached the duty to defend [DE 77 at 9, 11], the Court should reject such an argument. Thomas failed to plead that the Settlement Amount was a part of the damages claimed for Everest's alleged breach of the duty to defend. [DE 47 at ¶ 35]. Furthermore, Florida law is "well established that when an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other expenses incurred in defending the action brought by the third party as damages for the breach of contract." *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, 864 So. 2d 1126, 1129 (Fla. 2d DCA 2003). If there was a duty to defend but, ultimately no duty to indemnify, "the damages flowing from a breach of the duty to defend would be limited to recovery of the litigation expenses incurred by the insured in defending the underlying action, including attorney's fees and costs." *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1232 & n.17 (M.D. Fla. 2015).

A breach of the duty to defend "does not require the insurer to pay a settlement where no coverage exists." *McCreary v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692, 695 (Fla. 4th DCA 1999) (quoting *Illinois Ins. Exch. v. Scottsdale Ins. Co.*, 679 So. 2d 355, 358 (Fla. 3d DCA 1996)). As the Eleventh Circuit has held, "Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy," and "[t]his remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action." *Spencer v. Assurance Co. of America*, 39 F.3d 1146, 1149 (11th Cir. 1994); *see also Kopelowitz v. Home Ins. Co.*, 977 F. Supp. 1179, 1186 (S.D. Fla. 1997) (same).

"A determination of coverage . . . is a condition precedent to any recovery against an insurer." *Spencer*, 39 F.3d at 1149. (holding insurer had no duty to indemnify insured for settlement between insured and third-party claimant even though insurer breached the duty to defend); *Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.*, 6:12-CV-914-ORL-37, 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014) (holding "actual coverage is required for an insured to recover against an insurer, even following a wrongful refusal to defend").

In other words, for Thomas to be entitled to recover the Settlement Amount from Everest, it must prove that there is coverage under the Policy notwithstanding any breach of the duty to defend. *See id.* at 1148-51 (holding insurer had no duty to indemnify insured for settlement between insured and third-party claimant even though insurer breached the duty to defend); *Sinni*, 676 F. Supp. 2d at 1332 (holding insurer was not barred from relying on exclusion to preclude coverage even though it breached the duty to defend); *Morales v. Zenith Ins. Co.*, 8:10-CV-733-T-30TGW, 2012 WL 124086, at *6 (M.D. Fla. Jan. 17, 2012) (same), *aff'd*, 776 F.3d 1285 (11th Cir. 2015).

Thomas' reliance on *Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n*, 483 So. 2d 513, 516 (Fla. 3d DCA 1986), which states that "[i]f the insurer breaches its duty to defend, it . . . becomes liable for all damages naturally flowing from the breach," is misplaced. [DE 77 at 9]. As another court recently held, *Carrousel*, and other cases like it, "merely hold that, where an insurer undertakes the defense of an insured, but does so inadequately, the insurer is in breach and becomes liable for all associated 'collateral' damages, such as the cost of hiring alternative counsel." *Trovillion Const. & Dev., Inc. v. Mid-Continent Cas. Co.*, 6:12-CV-914-ORL-37, 2014 WL 201678, at *8 (M.D. Fla. Jan. 17, 2014). *Carrousel* "do[es] not support the position that a wrongful refusal to defend negates an insured's burden of proving coverage." *Id.* Thus, Thomas' argument

that it is entitled to recover the Settlement Amount as a result of a breach of the duty to defend is contrary to Eleventh Circuit and Florida precedent. Damages for a breach of the duty to defend are limited to the attorney's fees and costs incurred in defend the Underlying Action after Thomas provided notice of the Second Amended Complaint to Everest.

### 2. Insufficient Evidence to Establish Entitlement to All Attorney's Fees and Costs Incurred in Defending the Underlying Action.

In calculating the amount of attorney's fees and costs Thomas incurred in defending the Underlying Action, Thomas provides only a simple declaration with total amounts of attorney's fees ($141,324.21) and costs ($36,799.04) "expended" in more than "four years of litigation." [DE 74-1 at ¶ 16]. There is no itemization of these fees or costs. There is no evidence that Thomas paid these amounts. Importantly, there is no evidence of *when* Thomas incurred these fees and costs.

In this lawsuit, Thomas specifically alleges that "the Second Amended Complaint in the Lawsuit is the complaint that is the relevant pleading" in the Underlying Action. [DE 47 at ¶ 13]. Thomas has not alleged that Everest breached the duty to defend when the Complaint or the First Amended Complaint was the operative pleading in the Underlying Action. Accordingly, Thomas is not entitled to fees and costs incurred in the defense of the Underlying Action during these times.

Ainsworth filed its original Complaint on June 22, 2015. *See* Everest's Response to Thomas' Statement of Facts, Exhibit A. On March 28, 2017, Ainsworth filed the Second Amended Complaint. [DE 28-1]. Thomas tendered the Second Amended Complaint to Everest two days later on March 30, 2017. [DE 28-3].

Only after Thomas tendered the Second Amended Complaint to Everest, and assuming there was actually a duty to defend (which Everest disputes), Everest would "only [be] liable for the costs of defending the lawsuit after that date." *See Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1383 (11th Cir. 1998). Everest is not responsible for any fees and

17

costs incurred prior to March 30, 2017. Thus, of the more than "four years of litigation" included in Thomas' fees and costs figure, nearly two years had already transpired before Thomas tendered the Second Amended Complaint to Everest.

Accordingly, Thomas has failed to carry its burden to establish entitlement to the full amount of attorney's fees and costs allegedly incurred ($178,123.25).

### 3. Thomas is Not Entitled to Interest on Settlement Amount if Everest has a Duty to Indemnify.

Thomas asserts that Everest would be responsible for the Settlement Amount "plus interest." [DE 77 at 10-11]. Everest is not responsible for this "interest." Pursuant to the Settlement Agreement, Thomas was not responsible for any interest on the Settlement Amount. As Thomas concedes, Thomas is required to pay the Settlement Amount to Ainsworth over time "*interest free*." [DE 74 at ¶ 15].

Because Thomas has not paid, and has no obligation to pay, interest on the Settlement Amount, Everest has no obligation to indemnify Thomas for such interest. To require Everest to do so would result in a windfall to Thomas. Accordingly, Thomas is only entitled to the Settlement Amount if the Court determines that Everest breached the duty to indemnify.

## V.   CONCLUSION

Thomas has failed to carry its burden to establish it is entitled to summary judgment on any of the issues raised. The evidence is not sufficient to establish that Thomas became legally obligated to pay Ainsworth due to "property damage". Even if Thomas could actually show there was covered "property damage", the Impaired Property Exclusion bars coverage for the Settlement Amount.

WHEREFORE, Everest respectfully requests that the Court deny Thomas's Motion for Partial Summary Judgment on the Duty to Indemnify, and grant Everest's cross motion for summary judgment on the duty to indemnify.

Respectfully submitted,

*/s/ Josh Levy*
Josh Levy
Fla. Bar No.: 668311
Kennedys LLP
1395 Brickell Avenue
Suite 640
Miami, FL 33131
Tel: (305) 371-1111
Email: josh.levy@kennedyslaw.com
*Attorneys for Everest National Insurance Company*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using ECF/CM and sent on May 13, 2021 by e-mail to the following:

Counsel for Thomas Machinery, Inc.

Edward H. Zebersky, Esq.
Jordan A. Shaw, Esq.
Kimberly A. Slaven, Esq.
Zebersky Payne Shaw Lewenz, LLP,
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 595-6060
Facsimile: (954) 989-7781
E-mail: ezebersky@zpllp.com; jshaw@zpllp.com; kslaven@zpllp.com.

                                                                  */s/ Josh Levy*